UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
|     Plaintiff, | : | CRIMINAL CASE NO. |
| | : | 3:13-CR-00041 (JCH) |
| v. | : | |
| | : | |
| DAVID BRYSON, | : | APRIL 22, 2014 |
| BART GUTENKUNST, and | : | |
| RICHARD PEREIRA, | : | |
|     Defendants. | : | |

**RULING RE: DEFENDANTS' JOINT MOTION FOR DISCLOSURE OF GRAND JURY MINUTES (Doc. No. 167)**

### I.   INTRODUCTION

Defendants David Bryson, Bart Gutenkunst, and Richard Pereira have been charged with one Count of Conspiracy to Commit Wire Fraud and eight Counts of Wire Fraud.  Second Superseding Indictment (Doc. No. 196).  They have moved for disclosure of the full minutes of the grand jury sessions, "including colloquies with grand jurors and the government's instructions to the grand jury."  Defendants' Motion for Disclosure of Grand Jury Minutes ("GJ Mot.") (Doc. No. 167).  Following the government's representation that it had cured an error identified by defendants in its original grand jury presentation, defendants were permitted to supplement their Motion. Defendants' Supplemental Briefing in Support of Defendants' Motion for Disclosure of Grand Jury Minutes ("Defs.' Suppl.") (Doc. No. 220) at 1-2.

The government opposes this Motion.  United States' Opposition to the Defendants' Motion for Disclosure of Grand Jury Minutes ("Gov't Opp.") (Doc. No. 179); United States' Opposition to the Defendants' Supplemental Briefing for Grand Jury Minutes (Doc. No. 234).  For the reasons discussed below, the Motion is **DENIED**.

1

## II.   STANDARD OF REVIEW

Under Federal Rule of Criminal Procedure 6(e)(3)(E)(ii), a court "may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii).  To obtain disclosure of grand jury minutes, the defendant must make "specific factual allegations of government misconduct."  United States v. Torres, 901 F.2d 205, 233 (2d Cir. 1990).  Inspection of grand jury testimony will be denied unless a defendant "presents a particularized need, claims a gross and prejudicial irregularity influencing the grand jury, or presents some similar compelling necessity . . . ." United States v. Abrams, 539 F. Supp. 378, 388-89 (S.D.N.Y. 1982) (citations omitted).  "A court will not review the sufficiency or legality of the evidence presented to the grand jury, moreover, absent a showing of a particularized need." Id. at 389.  Prosecutorial misconduct may provide a basis for dismissal of an indictment when the court either finds that the "violations did substantially influence [the grand jury's decision to indict], or if there is grave doubt that the decision to indict was free from such substantial influence." Bank of Nova Scotia v. United States, 487 U.S. 250, 263 (1988).

## III.   DISCUSSION

A. <u>Whether the Government's Alleged Misconduct Provides a Basis for Disclosure</u>

Defendants argue that the grand jury witness transcripts, provided to defendants in discovery, reveal that the government's conduct during the grand jury presentation was improper.  Memorandum of Law in Support of Defendants' Motion for Disclosure of

Grand Jury Minutes ("GJ Mem.") (Doc. No. 167-1) at 1.  They contend that this alleged misconduct justifies disclosure because "the documented improprieties during witnesses' testimony call into question what the government said to the grand jury outside of the witnesses' presence."  Id. at 5-6.  The defendants request the complete grand jury minutes "to assess more fully whether the government's behavior improperly influenced the grand jury."  Defendants' Reply in Further Support of Defendants' Motion for Disclosure of Grand Jury Minutes ("Reply") (Doc. No. 185) at 4.

A request for the entire grand jury minutes on the possibility that they may contain instances of prosecutorial misconduct does not strike the court as sufficiently particularized to merit disclosure under Rule 6(e)(3)(E)(ii).  A party shows a "particularized need" for disclosure by proving "that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed."  Douglas Oil Co. of California v. Petrol Stops Northwest, 441 U.S. 211, 221 (1979); see also In re Grand Jury Subpoena, 103 F.3d 234, 239 (2d Cir. 1996).  In United States v. Naegele, 474 F. Supp. 2d 9 (D.D.C. 2007), which defendants cite in support of their claim that they have shown a "particularized need," the court permitted disclosure of the entire grand jury record where the government had conceded that a critical piece of evidence, on which multiple counts of the indictment against the defendant were based, was not presented to the grand jury.  Naegele, 474 F. Supp. 2d at 10-12.  The Naegele court also described its case as "a rare example of a criminal defendant" making a showing of particularized need.  Id. at 10.  The defendants' request here appears considerably less justified in comparison.

Even if the defendants' request is sufficiently particularized, the court is unconvinced that the actions of the prosecution cited by the defendants as misconduct are actually misconduct. Many of the defendants' allegations of misconduct concern the government's failure to elicit allegedly exculpatory testimony from witnesses before the grand jury. See GJ Mem. at 8-11 (arguing that the government limited exculpatory testimony from witness); id. at 13 (noting that "[t]he government . . . assiduously avoided asking [Tara Bryson] about information in the Financial Update that would show New Stream treating the Bermuda debt as senior."); id. at 13-16 (asserting that the government asked witnesses questions that suggested that existing exculpatory evidence did not, in fact, exist). The Supreme Court has held that the government has no obligation to present exculpatory evidence to the grand jury, U.S. v. Williams, 504 U.S. 36, 55 (1992). Thus, the court cannot base a finding of misconduct on the government's possible restraint of the disclosure of exculpatory testimony in its questioning. While defendants acknowledge this precedent, they appear to argue that it is inapplicable to a prosecutor "blocking" or otherwise barring a witness from providing exculpatory testimony. GJ Mem. at 6, 25-26. The court, however, does not understand Williams to create such a distinction.

The defendants also attempt to circumvent Williams by asserting that the government prevented the disclosure of exculpatory evidence by mischaracterizing witness testimony and misleading the grand jury about the strength of their case against the defendants. Id. at 8-11, 13-16. Defendants specifically argue that the government's questions created the misimpression that New Stream's auditors lacked an independent basis for describing the Bermuda Fund as senior and that the audited financial

4

statements said nothing about the Fund's seniority or its existence in 2008.  Id. Mischaracterization of the auditors' testimony by the prosecution on why the auditors believed the Bermuda Fund was senior, if any, would be mitigated by the introduction into the grand jury record of Jay Levy's testimony to the SEC, which explained that auditors had concluded that the Fund was senior from review of documents New Stream submitted to them.  Gov't Opp. at 15-17 (noting that Jay Levy's testimony before the SEC was in the record before the grand jury).  Further, what, if anything, the audited financial statements reveal about the Bermuda Fund is a matter disputed by the parties. Id. at 21-24.  The latter challenge, then, is little more than a "complaint about the quality or adequacy of the evidence [that has been] recast as a complaint that the prosecutor's presentation was 'incomplete' or 'misleading.'"  Williams, 504 U.S. at 54.  Defendants' argument here does not provide a basis for potentially dismissing the Indictment, and thus cannot justify disclosure of the grand jury minutes.  "[A]n indictment is not defective because the defendant did not have an opportunity to present his version of the facts before the grand jury."  United States v. Ciambrone, 601 F.2d 616, 623 (2d Cir. 1979).

Only a few of the defendants' allegations of misconduct concern behavior other than the government's failure to present exculpatory material.  Defendants claim that the government's comments about a witness's testimony on how to read financial statements and the defendants themselves, as well as its interruption of witnesses' testimony with its own answers, were improper and prejudicial.  GJ Mem. at 17-18, 18-21; Reply at 9.  The government's behavior here, the defendants contend, could alone justify dismissal of the indictment. Reply at 9.  The court disagrees.

The court finds no cause to conclude that the government's comments on the witness's testimony—i.e., expressing doubt that the financial statements could reasonably be read in the way the witness suggested and questioning whether the witness had "reverse engineer[ed]" her explanation—unduly influenced the grand jury's decision to indict.  Similarly, the government's proposal that defendants' circulation of an organizational chart that did not include the Bermuda Fund was akin to a car dealer failing to disclose the entire car to a potential buyer—a statement the defendants unreasonably assert compare them to "dishonest car dealers"—was not so prejudicial as to merit dismissal.  See Reply at Ex. A, at 205:21-24, 206:1-2; id. at 9; compare with U.S. v. Hogan, 712 F.2d 757, 761 (2d Cir. 1983) (dismissing indictment where the government, among other things, argued that the defendant "was a real hoodlum who should be indicted as a matter of equity.").  Lastly, though defendants take issue with the government's interruption of witness testimony with its own explanations of the defendants' behavior, and argue that the witnesses were "pressured" into endorsing the government's explanations, the court cannot fault the government for the witnesses' decision to affirm the government's positions, even if that affirmation contradicted those witnesses' prior testimony.  GJ Mem. at 18-22.  Nor can it conclude, from the existing record, that the witnesses only agreed with the prosecution because they felt pressure from the government's questioning to do so.

Defendants further charge that the government improperly introduced false testimony to the grand jury by failing to correct a misrepresentation made by Special Agent John McKenna during his testimony.  GJ Mem. at 22, 24; Defs.' Suppl. at 5-6, 7-9.  They argue that misleading the jury in this way merits disclosure.  Defs.' Suppl. at 9.

The court agrees that prosecutors may not "mislead [the grand jury] or . . . engage in fundamentally unfair tactics before it." Ciambrone, 601 F.2d at 623. However, it is not apparent that the government's failure to correct or clarify Agent McKenna's statement that defendants did not offer any explanation for why an organizational chart omitting reference to the Bermuda Fund was still being circulated in September 2005—a statement that defendants insist was false, as defense counsel did explain why the chart had been circulated to investors—warrants disclosure. Defs.' Suppl. at 5. The court does not find that the introduction of Agent McKenna's erroneous testimony here "substantially influence[d]" the grand jury's decision to indict, or that it creates grave doubt that the decision to indict was free from this influence. Bank of Nova Scotia, 487 U.S. at 263.

The Naegele decision, cited by the defendants in support of their request for disclosure on this basis, does not persuade the court otherwise. As discussed above, in Naegele, disclosure of the grand jury record was permitted because the government had misled the grand jury about the existence of a part of a document on which multiple counts of the indictment returned by the grand jury were based. Naegele, 474 F.Supp.2d at 11. A complete form of said document was never, in fact, presented to the grand jury. Id. In this case, Counts One, Three, and Six of the Second Superseding Indictment against the defendants are based, in part or entirely, on defendants' circulation of the aforementioned organizational chart. See Second Superseding Indictment at ¶¶ 21, 24. However, defendants do not assert that the grand jury was misled about whether this chart was circulated. They instead argue that the grand jury was misled about whether defendants had an explanation for the circulation of the chart.

7

The existence of an explanation for the circulation of the chart is relevant to the defendants' defense for the charges against them, but not to whether a factual predicate for these charges actually existed, as the document at issue in <u>Naegele</u> was.[1]  <u>Naegele</u>, thus, is inapposite here.

Because the court is unpersuaded that the actions of the prosecution before the grand jury identified by the defendants as misconduct were actually misconduct, the Motion is **DENIED** on this ground.

B. <u>Government's Violation of the Fifth Amendment Provides a Basis for Disclosure</u>

Defendants additionally argue that the government improperly commented on their invocation of their right to remain silent pursuant to the Fifth Amendment of the United States Constitution.  GJ Mem. at 23-25.  Determining whether a prosecutor violated a defendant's Fifth Amendment guarantee against self-incrimination by commenting on his failure to testify entails examining whether the prosecutor's comment "was manifestly intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify."  <u>U.S. v. Pitre</u>, 960 F.2d 1112, 1124 (2d Cir. 1992) (internal quotation marks and citation omitted).  Defendants insist that "the government's open-ended questions" of Agent McKenna on whether defendants were represented "left the grand jurors with the

---

[1] Defendants also argue that eliciting the testimony from Agent McKenna at issue was improper because defendants offered an explanation for the circulation of the organizational charts during communications between government counsel and defense counsel conducted pursuant to Federal Rules of Evidence 408.  Memorandum of Law in Support of Defendants' Motion for Disclosure of Grand Jury Minutes (Doc. No. 167-1) at 24 n.11.  Defendants, however, appear to take greater offense at the inaccuracy of the testimony.  <u>Id.</u> at 24.  The court agrees that a prosecutor eliciting testimony regarding compromise negotiations before a grand jury may run afoul of FRE 408, and it does not endorse the government's failure to correct at the time Agent McKenna's improper testimony.  However, it once again notes <u>Williams</u>' holding that exculpatory material—<u>i.e.</u>, the existence of an explanation for the chart from defendants—does not have to be presented to the grand jury.

erroneous impression" that defendants had met with the government but, as discussed above, had never offered an explanation to counter the allegations against them. GJ Mem. at 24.

While it is possible that the grand jury may have understood the government's question to Agent McKenna—of whether any of the defendants explained why they were circulating an organizational chart that did not include the Bermuda Fund—the court does not find that the jury would "naturally and necessarily" understand it to be so. See Reply at Ex. A, at 25:13-25, 26:1-9. The transcript of the exchange at issue here is ambiguous, at best, on what the government's intentions were in questioning Agent McKenna. Id. It cannot be read to show a "manifest intention" to comment on the defendants' decision to remain silent.

Further, even if the government's questioning of Agent McKenna was an improper comment on the defendants' Fifth Amendment rights, the court is satisfied that the government cured any potential prejudicial effect of this by eliciting testimony from Agent McKenna that defendants have an absolute right not to speak with him or testify before the grand jury, prior to returning the Second Superseding Indictment. See Defs.' Suppl. at Ex. B, at 40:9-16, 40:23-25, 41:1-13; see also U.S. v. Rivera, 22 F.3d 430, 437 (2d Cir. 1994) (holding that determination of whether prosecutor's improper statement during summation was a denial of due process rights depends, in part, on the curative measures taken by the court); U.S. v. McMillan, 600 F.3d 434, 452-53 (5th Cir. 2010) (finding that a prosecutor's improper comment at trial on defendant's failure to testify was cured by the district court's instruction that the defendant need not testify or put on any evidence). Given the comments of government's counsel prior to seeking the

Second Superseding Indictment, it cannot be said that the government "manifestly intended" to inappropriately comment on defendants' right to remain silent. Indeed, government counsel's remarks at that time had exactly the opposite intention.

## IV. CONCLUSION

For the aforementioned reasons, the Motion for Disclosure of Grand Jury Minutes (Doc. No. 167) is **DENIED**.

**SO ORDERED.**

Dated at New Haven, Connecticut this 22nd day of April, 2014.

                                                                /s/ Janet C. Hall_____
                                                              Janet C. Hall
                                                              United States District Judge