**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|                                |     |                          |
|--------------------------------|-----|--------------------------|
|                                | :   |                          |
| UNITED STATES OF AMERICA       | :   | CRIMINAL CASE NO.        |
|                                | :   | 3:13-CR-00041 (JCH)      |
|                                | :   |                          |
| v.                             | :   |                          |
|                                | :   |                          |
| DAVID BRYSON et al.,           | :   | JULY 31, 2015            |
| Defendants.                    | :   |                          |

**RULING RE: GOVERNMENT'S MOTION FOR RESTITUTION [DOC. NO. 384]**

On May 21, 2014, defendants David Bryson ("Bryson"), Bart Gutekunst ("Gutekunst"), and Richard Pereira ("Pereira") pled guilty to Count One of the Second Superseding Indictment, conspiracy to commit wire fraud in violation of section 371 of title 18 of the United States Code.   On May 5, 2015, May 6, 2015, and May 7, 2015, respectively, the defendants were each sentenced to a term of imprisonment.   At each sentencing, the court ordered restitution in an amount to be determined pursuant to section 3663A of title 18 of the United States Code.

Currently pending before the court is the government's Motion for Restitution (Doc. No. 384).   The government requests entry of an order granting restitution to the victims of the offense as defined by 18 U.S.C. § 3663A, and as set forth in its proposed "Schedule A" (Doc. No. 415), for a total of $57,068,404.56.   The defendants have filed a Response objecting to the Motion.   Defendant's Response to Government's Motion for Restitution (Doc. No. 409) ("Def.'s Resp.")

**II.    APPLICABLE LAW**

Pursuant to the Mandatory Victims Restitution Act (MVRA), the court must order restitution for victims of certain offenses.   18 U.S.C. § 3663A(a)(1).   The MVRA

1

defines a "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme . . . of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme."   18 U.S.C. § 3663A(a)(2).   In cases where the offense resulted in loss of property to a victim, the amount of restitution is equal to the greater of the value of the property on the date of loss or the value of the property on the date of sentencing, less the value of any part of the property that is returned.   18 U.S.C. § 366A(b).   In determining value for the purpose of restitution, "a district court must consider that the purpose of restitution is essentially compensatory: to restore a victim, to the extent money can do so, to the position he occupied before sustaining injury."   U.S. v. Boccagna, 450 F.3d 107, 115 (2d Cir. 2006).

The court resolves any dispute as to the proper amount or type of restitution by a preponderance of the evidence.   18 U.S.C. § 3664(e).   The government has the burden of demonstrating the amount of loss sustained by a victim as a result of the offense.   Id.   The MVRA does not require "mathematical precision," but rather "a reasonable approximation of losses supported by a sound methodology."   United States v. Gushlak, 728 F.3d 184, 196 (2d Cir. 2013).   The preponderance standard "must be applied in a practical, common-sense way.   So long as the basis for reasonable approximation is at hand, difficulties in achieving exact measurements will not preclude a trial court from ordering restitution."   Id.   Thus, while the final restitution figure "must correspond to all actually ascertainable losses," a "reasonable estimate" will suffice where it is "impossible to determine the precise amount."   U.S. v. Ageloff,

809 F. Supp. 2d. 89, 97 (E.D.N.Y. 2011) (citing U.S. v. Catoggio, 326 F.3d 323, 329 (2d Cir. 2003)).

## III.   DISCUSSION

The defendants submitted four objections to the Motion for Restitution.   Def.'s Resp.   First, that the government has not provided evidence to support the amounts requested for investors who transferred money into the new structure; second, that the government did not include any redemptions paid in the normal course; third, that there is an extra entry for one investor; and fourth, that the proposed order does not account for amounts that will be returned to investors in the future.   Def.'s Resp. at 1-2.   It is the court's view that the government's amended proposed restitution order, submitted with the government's Reply, United States' Reply in Support of its Motion for Restitution (Doc. No. 413) ("Gov't Rep."),[1] renders moot all of these objections except the first.   After reviewing the evidence submitted by the government, the court concludes that the government has shown, by a preponderance of the evidence, that the amounts requested reflect the actual loss suffered by the victims as a result of the defendants' criminal conduct, less the value of any property returned to date in New Stream's bankruptcy proceedings, as set forth in detail below.   Thus, the government's Motion for Restitution, as modified in its Reply, is **GRANTED** as set forth in this Ruling. The court determines the restitution owed to each victim as follows:

A.   Post-March Investments

As set forth in the court's prior Rulings, the eleven investors who were

---

[1] A copy of Exhibit A to the government's Reply, which sets forth the amounts underlying the restitution calculation, is attached to this Ruling as Exhibit A.   The investor names have been redacted.

fraudulently induced to invest in New Stream – after the conspiracy to defraud began in March 2008 – suffered an actual loss of the total investment as a result of the defendants' scheme.[2]   Ruling re: Findings of Fact, (Jan. 12, 2015) (Doc. No. 353) ("Ruling re: Findings of Fact") at 4-13; Ruling re: Loss Calculation and Other Sentencing Guideline § 2B1.1 Issues (Apr. 1, 2015) (Doc. No. 369) ("Ruling re: Loss") at 2-10, 12-16.   The restitution owed to these investors is thus the total amount they invested, see G. Exh. 119, less any property returned to date in the bankruptcy proceedings, as discussed in part C, infra, at 9.

> B.   Pre-March Investors

A second set of victims are investors who had invested in either the Cayman Fund or the U.S. Fund prior to the onset of the conspiracy in March 2008.   As set forth in the court's prior Ruling, these investors also suffered an actual loss as a result of the defendants' conspiracy.   Ruling re: Loss at 16-19.   Namely, as a result of the defendants' conspiracy, the value of their investments was decreased.   Id. at 18.   In fact, these investors, like the first group, also lost close to the entire value of their investments when the fund collapsed.   However, unlike the first group of investors, not all of that loss is attributable to the defendants' criminal conduct.   Id. at 18.   Thus, the court may only order restitution for the portion of the victims' loss that was caused by the defendants' criminal conduct in the course of the conspiracy.

---

[2]  While the court's prior rulings addressed loss under the guidelines, it similarly finds that, under the MVRA, the actual loss caused by the defendants' criminal conduct in the course of the conspiracy for these post-March 2008 investors was their total investment.   See U.S. v. Paul, 634 F.3d 668 , 677-8 (2d Cir. 2011).

In its previous Ruling on loss, the court determined that a reasonable approximation of the decrease in value that resulted from the commission of the offense was a 12% decrease in value.   Id. at 18-19; see Gushlak, 728 F.3d at 196 (the MVRA requires "a reasonable approximation of losses supported by a sound methodology").   This was based on a calculation and supporting documents provided by the defendants, from which the court determined that, but for the conspiracy and the defendants' criminal conduct, U.S. and Cayman Fund investors (as pari passu investors) would have recovered approximately 19% of their total claims in New Stream's bankruptcy proceedings. However, as a result of the conspiracy, which subordinated their investments to the Bermuda Fund investments, they recovered only approximately 7% of their total claims. Ruling re: Loss at 18-19, n. 9.   Thus, the defendants' conspiracy resulted in a loss of 12% of their investments.[3]

This category of investments includes both new investments that were made into the Cayman Fund or the U.S. Fund between December 2007 and March 2008, and investments that were transferred from the old fund structure (either the Bermuda Fund or the Master Fund) into the Cayman Fund or the U.S. Fund.   To calculate restitution based on these investments, the court adopted the methodology proposed by the government in its Exhibit A to Reply in Support of Motion for Restitution (Doc. No. 414). Namely, the court first determined the total amount invested or transferred into the

---

[3] While the court's prior calculation was done to determine actual loss for sentencing guideline purposes, it is also a reasonable approximation of actual loss as defined by the MVRA.

Cayman Fund or the U.S. Fund before March 2008.[4]   It then subtracted partial

redemption payments and distributions made after March 2008 and during the course

of the undiscovered conspiracy.   The court then calculated 12% of this amount, to

reflect the actual loss suffered by the victims.   Finally, the court deducted from the

actual loss amount any property returned to date in the bankruptcy proceedings, as

discussed in part C, infra, at 9.

        The defendants did not object to this proposed methodology, other than their

general objections stated previously.   However, during a conference with the parties,

the court asked the government to explain why amounts received as distributions and

partial redemption payments should not also be deducted from the total owed as

offsets, rather than calculating the actual loss based on the investment net of these

distributions and partial redemption payments.[5]   The result of this approach, as

compared to the one used by the government, would be a lower or no restitution

amount for investors who received distributions and/or partial redemption payments.

_____

    [4] For new investments between December 2007 and March 2008, the total amount is provided on
G. Exh. 119.   For investments transferred from the Bermuda Fund to the Cayman Fund, the total amount
was calculated by adding a) the principal amount listed on the "Amended and Restated Note" transferring
the investment from the Bermuda Fund to the Cayman Fund, Doc. No. 420-1 at 13-104, and b) the total
value of any additional "Contributions," as set forth on Cayman Fund account statements from December
2007, January 2008, or February 2008, id. at 1-12.   For investments transferred from the Master Fund to
the U.S. Fund, the total amount was calculated by referencing the "Contributions" on the January 2008
U.S. Fund account statements.   Id. at 105-127.

        Where an investor had both pre-March 2008 and post-March 2008 investments, e.g., Harcourt,
the court added the total value of the post-March 2008 investment and 12% of the pre-March 2008
investment, and then deducted the value of the bankruptcy offsets.

    [5] In their letter to the court (Doc. No. 423), the government refers to this as "the court's proposal."
However, the court, in raising this issue, was not providing an alternate proposal.   Rather, it raised the
issue in order to test whether the government's proposed methodology correctly reflected the court's
obligation to order restitution under the MVRA.

The court permitted both parties to submit additional authority on this issue.   The defendants declined to do so.   The government noted the paucity of case law on this issue under the MVRA, but provided the court with cases addressing an analogous situation in the context of receivership distributions in Ponzi schemes.   Letter to Court dated July 20, 2015 (Doc. No. 423).   After reviewing the case law and its obligations under the MVRA, the court concludes that the government's proposed methodology better reflects the actual loss suffered by the victim investors.   Because the court raised the issue, however, it will set forth its reasons for accepting the government's approach (and rejecting the alternative approach).

First, the court agrees that there is a lack of MVRA case law on point for this issue.   The Ponzi scheme cases cited by the government describe two different proposals for distributing a pool of assets to victims.   The government notes that its proposal is analogous to the "net investor" method described in these cases, see S.E.C. v. Byers, 637 F.Supp.2d 166 (S.D.N.Y. 2009), aff'd sub nom. S.E.C. v. Malek, 397 F. App'x 711 (2d Cir. 2010) and aff'd sub nom. S.E.C. v. Orgel, 407 F. App'x 504 (2d Cir. 2010), whereas deducting distributions as "offsets" would be more analogous to the "rising tide" method, see S.E.C. v. Huber, 702 F.3d 903 (7th Cir. 2012).   While these cases are helpful in conceptualizing the differences between the two methods, the scenario at hand is distinguished from a Ponzi scheme receivership in important ways, which differences inform the court's decision to use the government's net investor approach.

Unlike "profits" paid out in the course of an undiscovered Ponzi scheme, which are generally themselves fraudulent and a crucial component in inducing additional

investments, the distribution and partial redemption payments appear to have been made in the ordinary course of business.   Further, while in a Ponzi scheme profits are generally paid out of new, fraudulently obtained investments, there is no evidence before the court to support a finding that the money fraudulently obtained in new investments after the conspiracy began was used to pay distributions and/or redemptions.   Indeed, the amount paid out in distributions and partial redemptions was greatly exceeded by the amount fraudulently obtained by New Stream in new investments.[6]  See Exh. A to Government's Reply (Doc. No. 414).

Perhaps most importantly, in the Ponzi scheme scenario, the court is primarily tasked with determining the most equitable distribution among the victims of a fixed pool of assets.   However, the amount of restitution ordered to one victim has no bearing on the amount of restitution ordered to any other victim.   While the court's authority to approve a receiver's proposed distribution of assets arises from its inherent equitable powers, see In re Receiver, 2011 WL 2601849, at *2 (D.S.C. July 1, 2011), the court has no inherent power to order restitution, Gushlak, 728 F.3d at 190.   Rather, the court may only order restitution within the limits of its statutory grant under the MVRA: namely, in the amount of the victim's actual loss caused by the defendants' criminal conduct in the course of their conspiracy.

Deducting the entire amount of distributions and redemption payments made in the ordinary course of business as "offsets" to the loss amount would not serve to make the victim investors whole in the amount of their actual loss.   An example helps

_____

[6] Approximately $10 million in distributions/partial redemption payments version approximately $40 million in new investments.

illustrate this point.   Prior to the conspiracy beginning in March 2008, Investor A invests

$1 million in the Cayman Fund and Investor B invests $800,000.   At some point in the

summer of 2008 – at which point the conspiracy has commenced, reducing the value of

Cayman Fund investments, but is still unknown to the investors – Investor A receives a

distribution of $200,000 in the normal course of business.   Now both Investor A and

Investor B have a net investment of $800,000.   The fund collapses, resulting in near

total losses to all investors, of which the court has determined that 12% are fraud

losses.   Under the government's proposed methodology, both investors are entitled to

$96,000 in restitution (less any amount received in bankruptcy).   However, if the

$200,000 distribution is deducted as an offset, Investor A is not entitled to any

restitution.   In the court's view, this does not accurately reflect the actual loss suffered

by Investor A.   The $200,000 distribution is not properly characterized as 100%

"property returned," because it also includes return of the 88% of the investment not

taken by the defendants' conspiracy to defraud.   In addition, the court can see no

reasonable basis to distinguish the actual losses suffered by two investors who had the

same net investment before any losses were actually realized.

      C.   <u>Offsets</u>

      The government and the defendants agree that the portion of their investments

actually returned to victims through the bankruptcy proceedings should be deducted

from the restitution owed.   The court agrees that, under the MVRA, these amounts are

properly considered "property returned" to the victims prior to the entry of restitution.

18 U.S.C. § 3663A(b)(1)(B)(ii).   Unlike the distributions described above, these

payments to investors were made after the conspiracy had been revealed, and after all

fraud losses had been realized.   The values of these offsets are set forth on Exhibit A to the government's Reply (Doc. No. 414).

Finally, the court agrees with the defendants and the government that the restitution orders shall be reduced by any amount later recovered by any of the victims for the same loss in a civil proceeding, including additional amounts recovered by the victims in the bankruptcy proceeding.   See 18 U.S.C. § 3664(j)(2).   The Restitution Orders will reflect this.

## IV.   CONCLUSION

The government's Motion for Restitution (Doc. No. 384) is **GRANTED** as set forth above.   A separate Restitution Order will issue for each defendant.

**SO ORDERED.**

Dated this 31st day of July, 2015 at New Haven, Connecticut.

_____
Janet C. Hall
United States District Judge